IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GENERAL STAR NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05-0631-CV-W-HFS |
| MILLER LAW FIRM, P.C., et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

The insurer filed this case seeking a ruling that it is not obligated on a legal malpractice policy because, although it agreed to insure claims made during the policy period, it contends it offered no coverage to claims that relate to alleged malpractice occurring before the period of coverage when such claims "may reasonably be expected" to be asserted, according to reasonable evaluation at the beginning of the period. Defendant law firm ("Miller") presents a motion for summary judgment because no complaint had been made by the client prior to the period of coverage. There was not even an expression of dissatisfaction with the quality of legal services, although several of the most prominent grounds for alleging malpractice were plainly disclosed in a portion of an appellate decision in the underlying litigation. In the alternative, Miller cites extensive delay by the insurer in denying coverage, which it relies on as a waiver of the contention here made. It is further asserted as a defense that the insurer is estopped by reason of prejudicial delay from making the contention of noncoverage on the grounds here asserted.

The insurer has filed a cross-motion for summary judgment, seeking a ruling that there is no coverage under the circumstances.

For reasons outlined below, I agree with the law firm that the insurer is estopped, and has waived assertions that the <u>application</u> for insurance misleadingly omitted disclosure of a possibility that there would be claims of malpractice asserted by the client (Robertson Contractors, Inc.–herein referred to as Robertson). I agree with the insurer, however, that the lack of notice of any claim by Robertson, as of the time the policy took hold, is not a complete bar to a later contention that there is no coverage. Regardless of delay, if a claim may "reasonably be <u>expected</u>" to be made, that is, if it is more than 50% probable it will be asserted, and if a reasonable attorney would believe such a claim by Robertson was that highly likely, I believe there is no coverage, according to Exclusion E of the policy.

The record does not permit a ruling as a matter of law one way or the other on the question of probability of a Robertson claim, using the standard I believe applicable. While it may be regretted that a jury may need to evaluate the predictability of a claim, based on the evidence, I see no clear alternative (short of settlement). Therefore, both motions for summary judgment will be denied, except for granting partial summary judgment in favor of the law firm on the belated challenge to the contents of the application form.[1]

\* \* \*

The first issue to be dealt with is that of waiver and/or estoppel. That needs to be decided because it governs what documentary language needs to be applied. The application for insurance form contains language that invites or requires disclosure of risky situations known to the applicant when it is merely possible that malpractice claims will be made. Perhaps a 10% chance of claims

---

[1] To the extent prior briefing has not focused on probable, rather than merely possible, claims, renewed motions for summary judgment would be considered.

would need to be disclosed in the application. In Exclusion E of the policy, however, there is noncoverage of claims reasonably to be "expected", a distinctly higher standard and a question dealt with below. Although the burden is greater, the insurer has a much better chance of overcoming a waiver/estoppel claim on the noncoverage issue than on the application issue, under Missouri law that distinguishes between intrinsic parts of the contract and merely defensive claims, such as alleged omissions in the insurance application.

Under an Eighth Circuit decision I believe the insurer's whole case would fail, because an insurer's six month delay in asserting a claim for noncoverage was deemed fatal. City of Carter Lake v. Aetna Casualty and Surety Company, 604 F.2d 1052, 1059-1062 (1979). While this may be the better rule, it has not yet been adopted in Missouri. The Missouri rule still seems to be that a court cannot, by estoppel, make a policy cover terms that are expressly excluded (as in Exclusion E). See, e.g., Martinelli v. Security Insurance Co. of New Haven, 490 S.W. 2d 427, 434 (Mo.App. 1973). This distinction is difficult to handle. In another part of the same opinion it is said that estoppel can be used to prevent "a defense of non-coverage". See also Safeco Ins. Co. v. Stone & Sons, Inc., 822 S.W.2d 565 (Mo.App. 1992) using estoppel to bar a contention that the policy sued on had been cancelled. Thus the Missouri court resurrected a defunct agreement. While the logic-chopping involved in Missouri law on this subject seems to me to be vulnerable and subject to change, I cannot say that Missouri has yet adopted the Carter Lake approach.

Therefore Exclusion E remains in effect, regardless of the many months of fumbling that occurred before the insurer decided to invoke it. But questions about omissions in the application form are, in my judgment, purely defensive matters that can be barred by waiver or estoppel, even though the insurer points out that there are some references to reliance on the application form in the policy.

3

It is not necessary to labor the issues of waiver and/or estoppel. The Miller reply brief (Doc. 66) spells this out adequately at pages 14-21. In some respects the delay here was much more egregious than that which was held to be fatal in Carter Lake. The insurer here did not reach a sticking point on coverage for about 21 months, after it had gone through three generations of analysts. Significant events that conceivably could be characterized as malpractice had been exposed in a published opinion that was in the books when the Miller claim was first made. Mo. Dept. Of Transport. ex rel PR Developers v. Safeco Ins. Co. and Robertson Contractors, Inc., 97 S.W.3d 21, 40-41 (Mo.App. 2002). Both an expert witness procedural foul-up and a belated failure-to-join problem were there outlined.[2] While I believe waiver is sufficient as a bar to challenging omissions in the application form I also accept the soundness of an estoppel contention. Under Carter Lake, a presumption of prejudice from loss of control of the case exists in the circumstances at bar, and Miller points out some specific theories of prejudice. I rule, therefore, that the insurer cannot rely on a theory of omissions in the application form.

Turning to the merits of the claim, as it relates to Exclusion E, the first consideration is what the insurer needs to prove. Miller contends that the insurer cannot prevail when no claim of malpractice or attorney blundering had been registered by the client before the policy was issued.

---

[2] I am aware that Miller contends (without citation) that the testimony of four witnesses that might be characterized as expert testimony actually was admitted into evidence without that label. What the record in the Robertson case shows is not presented by either side. On the continuance issue I might suppose that the trial judge was not simply being cranky about his docket. Judicial resistance could easily be based on a theory that a settlement might occur if the trial date remained fixed. As a judge I would wonder if it would not be premature to join MoDOT while an administrative claim was still pending. If a malpractice claim was thin on these points, one wonders what the best issue might be–failure to seek a mitigation instruction perhaps? Or was mitigation also premature? Insufficient persistence in seeking a continuance? Was the judge persuadable? What about the electric utility? The degree of likely merit in the malpractice issues presumably impacts on the measure of likelihood such claims would be pressed.

It relies on Judge Hungate's ruling in General Accident Ins. Co. of America v. Trefts, 657 F.Supp. 164 (E.D.Mo. 1987). I agree that the Hungate language goes too far, although as a practical matter is seems difficult to find legal malpractice cases that hold that knowledge of likely claims should be reasonably inferred when client unhappiness with counsel has not been expressed. I agree with the insurer that the test is what a reasonable attorney would believe under the circumstances. Although not an attorney malpractice case, I believe Judge Perry has it right in City of Brentwood, Mo. v. Northland Ins. Co., 397 F.Supp.2d 1143 (E.D.Mo. 2005).

But the insurer goes astray when it fails to deal with the applicable test under the exclusion language. The Eighth Circuit in Carter Lake, supra, says that when "expected" events are referred to in an insurance policy, this means there must be a showing that there is a "substantial probability" that the mishap will occur. 604 F.3d at 1058-1059. This is a burden of proof that the insurer has not used here in spelling out its claim. With due respect for the panel's language, which does not apply to insurance controversies governed by Missouri law, I favor a Philadelphia lawyer's articulation of the test; that is, whether the adverse event will "more likely than not" occur. C. Raymond Davis & Sons, Inc., v. Liberty Mutual Ins. Co., 467 F.Supp. 17, 20-21 (E.D.Pa. 1979). Several district judges outside the Third Circuit have used Judge Newcomer's articulation. It may not be far from that of Carter Lake, but seems to be somewhat more tangible. However the test may be phrased, it is not met or even discussed in the insurer's motion for summary judgment.

For the reasons stated the summary judgment motions advanced by the parties in Docs. 56 and 58 are hereby DENIED, except that partial summary judgment is granted to defendant Miller
5

on the insurance application issue. Further proceedings will be limited to applicability of Exclusion E.[3]

    /s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

September 20, 2007

Kansas City, Missouri

---

[3]If the case is now ready for trial I will transfer it to another judge, as I am not currently conducting jury trials because of limited courthouse hours.